# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ANITA L. YARGER,                              Case No. 1:20-cv-347

    Plaintiff,                              Litkovitz, M.J.

    vs.

COMMISSIONER OF                      **ORDER**
SOCIAL SECURITY,

    Defendant.

Plaintiff Anita L. Yarger brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). This matter is before the Court for disposition on plaintiff's Statement of Errors (Doc. 14), the Commissioner's response in opposition (Doc. 19), and plaintiff's reply (Doc. 23).

## I. Procedural Background

Plaintiff filed her application for DIB in June 2016, alleging disability since May 1, 2015 due to foot surgery, biopsy on thyroid (previous cancerous thyroid), "nontox" uninodular goiter, degenerative disc disease at C5-C6 with stenosis, degenerative disc disease plus facet degenerative joint disease at L4-S1, myalgia – myositis, bony exostosis, disorder of bursae and tendons in shoulder region, C6-C7 radiculitis, neoplasm of uncertain behavior of thyroid gland, status-post total thyroidectomy, papillary carcinoma, osteoarthritis of the toe joint, trapezius strain, and chronic pain of both shoulders. (Tr. 257). The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing

before administrative law judge ("ALJ") Renita K. Bivins on November 27, 2018. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing. (Tr. 32-81). On February 22, 2019, the ALJ issued a decision denying plaintiff's DIB application. (Tr. 15-26). The Appeals Council denied plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (Tr. 1-6). This matter is properly before this Court for review.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

2

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] last met the insured status requirements of the Social Security Act on September 30, 2018.

2. The [plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of May 1, 2015 through her date last insured of September 30, 2018 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the [plaintiff] had the following severe impairments: localized osteoarthrosis of the left and right foot with degenerative joint disease, hallux valgu[s][1], degenerative disc disease, cervical spondylosis without myelopathy, and right rotator cuff tendinitis (20 CFR 404.1520(c)).

4. Through the date last insured, the [plaintiff] did not have an impairment or

---

[1] "Hallux valgus" is "an abnormal deviation of the big toe away from the midline of the body or toward the other toes of the foot."  https://www.merriam-webster.com/medical/hallux%20valgus.

combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, [the ALJ] finds that, through the date last insured, the [plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently.  She is also able to stand and/or walk for 6 hours per 8 hour day and sit for 6 hours per 8 [hour] day, with normal breaks.  The [plaintiff] can frequently climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally stoop; frequently kneel; frequently crouch; and occasionally crawl.  She must avoid all exposure to unprotected heights.

6. Through the date last insured, the [plaintiff] was capable of performing past relevant work as a home health aide (DOT 355.67 4-014, SVP 3, medium work as generally performed, light work as actually performed).  This work, as actually performed, did not require the performance of work-related activities precluded by the [plaintiff]'s residual functional capacity (20 CFR 404.1565).

7. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from May 1, 2015, the alleged onset date, through September 30, 2018, the date last insured (20 CFR 404.1520(f)).

(Tr. 17-26).

## C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,*

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

4

(1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).  *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D.  Specific Errors

On appeal, plaintiff alleges that: (1) the ALJ's finding that plaintiff's testimony was not fully credible was not supported by substantial evidence and is contrary to law; (2) the ALJ erred by failing to find that plaintiff's postoperative hypothyroidism, obstructive sleep apnea, periodic limb movement disorder, obesity, and fibromyalgia are severe impairments in this case; (3) having found that plaintiff's obesity is a non-severe impairment, the ALJ failed to properly consider the impact of plaintiff's obesity on her ability to work as required under SSR 02-01p; (4) the ALJ failed to properly evaluate plaintiff's residual functional capacity ("RFC"); and (5) the ALJ erred by equating activities of daily living and household chores to the ability to perform substantial gainful work activity on a sustained basis.  (Docs. 14 and 23).

**1. The ALJ's severe impairment/obesity findings (Assignments of Error 2 and 3)[2]**

The Court initially considers plaintiff's second assignment of error, which challenges the ALJ's findings at step two of the sequential evaluation process. Plaintiff alleges the ALJ erred by failing to include as "severe" impairments her postoperative hypothyroidism, obstructive sleep apnea, periodic limb movement disorder, obesity, and fibromyalgia. (Doc. 14 at PAGEID 1270). Plaintiff argues that the ALJ's reasons for finding these impairments do not meet the definition of "severe" under the regulations - i.e., "they are either well controlled, of recent onset, unconfirmed by objective medical findings, or do not significantly diminish [plaintiff's] ability to perform basic work activities" - are "questionable at best." (*Id*. at PAGEID 1270-71, citing Tr. 18). Plaintiff contends that the ALJ did not address her obesity, and the ALJ discounted the impact of her fibromyalgia by claiming the symptoms could be attributed to her other conditions. (*Id*. at PAGEID 1270). Plaintiff generally alleges that the ALJ's failure to properly consider all her impairments "calls into question" the ALJ's ability to craft an RFC that accurately reflects a claimant's ability to engage in work activity. (*Id*.).

The Commissioner responds that plaintiff has not shown that the ALJ improperly declined to find obesity and fibromyalgia to be "severe" impairments in her case. (Doc. 19 at PAGEID 1300-02). The Commissioner contends that even if the ALJ erred by failing to find certain impairments were severe at step two of the sequential evaluation process, the error was harmless because the ALJ properly considered all of plaintiff's impairments, both "severe" and

---

[2] The Court has considered plaintiff's assignments of error in a different order than plaintiff has presented them in her statement of errors.

non-severe, in accordance with the Social Security regulations and rulings when formulating

plaintiff's RFC.  (*Id*. at PAGEID 1302-03).

An impairment is considered "severe" unless "the [claimant's] impairment(s) has no

more than a minimal effect on his or her physical or mental ability(ies) to perform basic work

activities."  Social Security Ruling 85-28, 1985 WL 56856, at *3 (1985).[3]  *See* also 20 C.F.R.

§ 404.1520(c) ("If you do not have any impairment or combination of impairments which

significantly limits your physical or mental ability to do basic work activities, we will find

that you do not have a severe impairment and are, therefore, not disabled.").  The

claimant's burden of establishing a "severe" impairment during the second step of the

disability determination process is a "*de minimis* hurdle."  *Higgs v. Bowen*, 880 F.2d 860,

862 (6th Cir. 1988) (citations omitted).  "Under [this] prevailing *de minimis* view, an

impairment can be considered not severe only if it is a slight abnormality that minimally

affects work ability regardless of age, education, and experience."  *Id.* (citing *Farris v. Sec'y

of Health and Human Services,* 773 F.2d 85, 90 (6th Cir. 1985)).

The ALJ found at step two of the sequential evaluation process that the following

physical impairments were "severe impairments": localized osteoarthrosis of the left and right

foot with degenerative joint disease, hallux valgus, degenerative disc disease, cervical

spondylosis without myelopathy, and right rotator cuff tendinitis.  (Tr. 18).  The ALJ found that

---

[3] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner."  *Ferguson v. Comm'r of Soc. Sec.,* 628 F.3d 269, 272 n. 1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).  The Sixth Circuit has refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations but has assumed that they are.  *Id.* (citing *Wilson,* 378 F.3d at 549).

plaintiff also had non-severe impairments of status post thyroidectomy for treatment of thyroid cancer, postoperative hypothyroidism, obstructive sleep apnea, periodic limb movement disorder, obesity, and fibromyalgia.  (*Id*.).  The ALJ found that these non-severe impairments were either "well controlled, of recent onset, unconfirmed by objective medical findings, or do not significantly diminish [plaintiff's] ability to perform basic work activities."  (*Id*.).  Plaintiff has not shown that the ALJ committed reversible error at step two of the sequential evaluation process.

First, plaintiff has not shown that the ALJ erred by failing to find that fibromyalgia was a severe impairment in this case.  Plaintiff alleges that the ALJ assumed the role of a medical expert by finding that the symptoms of fibromyalgia she experienced could be attributed to plaintiff's other conditions.  (Doc. 14 at PAGEID 1271).  But plaintiff has not pointed to evidence to show that she has been diagnosed with fibromyalgia and that the medical evidence establishes fibromyalgia to be a medically determinable impairment (MDI) in this case under SSR 12-2p, which provides guidance on how the agency develops evidence to establish that a person has an MDI of fibromyalgia and how the agency evaluates fibromyalgia in disability claims.  SSR 12-2p, 2012 WL 3104869, at *1 (July 25, 2012).  SSR 12-2p describes fibromyalgia as "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months."  SSR 12-2p, 2012 WL 3104869, at *2.  Pursuant to the Ruling, "FM [fibromyalgia] is an MDI when it is established by appropriate medical evidence."  *Id*.  If a physician diagnoses fibromyalgia, the agency will "review the physician's treatment notes to see if they are consistent with the diagnosis of FM. . . ."  *Id*.  The agency will find that a person has an MDI of fibromyalgia if a

physician diagnosed fibromyalgia and provides the evidence required under the Ruling, and the physician's diagnosis is not inconsistent with the other evidence in the individual's case record. *Id*. Under § II.A of the Ruling, the agency "may find that a person has an MDI of FM" if they meet all three criteria set forth in the Ruling, which include: "2. At least 11 positive tender points on physical examination . . . which must be found bilaterally (on the left and right sides of the body) and both above and below the waist . . . [and] 3. Evidence that other disorders that could cause the symptoms or signs were excluded. . . ." *Id*. at *2-3.

The ALJ found that (1) the record did not confirm that plaintiff "had the requisite number of tender point findings" bilaterally and above and below the waist; and (2) "there was no evidence that medical doctors had excluded other impairments as required in [SSR] 12-2p, especially considering [plaintiff's] diagnosis of lumbar DDD; postoperative hallux valgus right foot; cervical spondylosis without mye[l]opathy and right rotator cuff tendinitis." (Tr. 18). Plaintiff has cited no medical evidence to the contrary that demonstrates the required number and location of tender points. Nor has she pointed to evidence that rules out another medical condition as the source of her symptoms and links her subjective complaints to fibromyalgia. In addition, plaintiff has not pointed to evidence in the record that shows she was given a medically substantiated diagnosis of fibromyalgia or that she received treatment for fibromyalgia from any medical provider. Absent any such medical evidence, the ALJ did not err by failing to find fibromyalgia was a severe impairment in this case.

Second, plaintiff argues the ALJ erred by failing to find that she suffers from a severe impairment of obesity and, once the ALJ found the impairment to be non-severe, by failing to

properly consider how plaintiff's obesity impacts her ability to work.[4] (Doc. 14 at PAGEID 1270-71; Doc. 23 at PAGEID 1321-22). Plaintiff alleges that her weight of 188 pounds and height of 5 feet, 6 inches classifies her as "moderately obese," and it is "clearly reasonable to conclude that obesity will negatively impact [her] arthritic condition, degenerative joint disease, degenerative disc disease, cervical spondylosis etc." (Doc. 23 at PAGEID 1321). Plaintiff contends that the agency recognizes that these conditions and the symptoms they cause are impacted by her obesity. (*Id.* at PAGEID 1322). Plaintiff contends her impacted conditions include chronic foot and back issues, chronic cervical and shoulder issues, and arthritis of the back, hands and toes. (Doc. 14 at PAGEID 1272-73).

Plaintiff has not met her burden to show that her obesity is a severe impairment or to show that the ALJ erred under Social Security Ruling 02-01p, which addresses the evaluation of obesity in the disability process. SSR 02-01p, 2000 WL 628049 (Sept. 12, 2002). SSR 02-01p recognizes that obesity "*may*" affect an individual's ability to perform the exertional functions of sitting, standing, walking, lifting, carrying, pushing, and pulling, as well as an individual's ability to perform postural functions such as climbing, balancing, stooping, and crouching. *Id.*, at *6 (emphasis added). The Ruling ensures that the Commissioner will consider a claimant's obesity in performing steps two through five of the sequential analysis. *Id.*, at *3. SSR 02-01p does not mandate a particular mode of analysis for an obese claimant. *Bledsoe v. Barnhart,* 165 F. App'x 408, 411-12 (6th Cir. 2006). "It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations." *Id.* at 412 (quoting SSR 02-01p). *See also*

---

[4] Plaintiff alleges as the third assignment of error that the ALJ failed to comply with SSR 02-01p by not properly considering the impact of plaintiff's obesity on her ability to work. (Doc. 14 at PAGEID 1271-73). The undersigned considers the third assignment of error here in conjunction with the second assignment of error.

*Young v. Comm'r of Soc. Sec.,* No. 3:09-cv-1894, 2011 WL 2182869, at *7 (N.D. Ohio June 6, 2011) ("The Sixth Circuit requires the ALJ to mention obesity either expressly or indirectly where the record includes evidence of obesity's effects on the claimant's impairments.").

In light of the regulations requiring that a claimant "must furnish medical and other evidence that [the Commissioner] can use to reach conclusions about [the claimant's] medical impairment(s) and . . . its effect on [the claimant's] ability to work on a sustained basis," 20 C.F.R. § 404.1512, a claimant relying on obesity to establish disability should provide evidence that obesity affected her ability to work. *Snyder v. Comm'r of Soc. Sec*., No. 2:10-cv-00821, 2012 WL 27302, at *8 (S.D. Ohio Jan. 5, 2012) *report and recommendation adopted*, 2012 WL 871202 (S.D. Ohio Mar. 13, 2012) (citing *Cranfield v. Comm'r*, *Soc. Sec.*, 79 F. App'x 852, 857-58 (6th Cir. 2003) (finding that even though physician's reports indicated obesity, the ALJ was not obligated to address the claimant's obesity where the claimant failed to provide evidence that her obesity was a significant impairment that affected her ability to work); *May v. Astrue*, No. 4:10-cv-1533, 2011 WL 3490186, at *6 (N.D. Ohio June 1, 2011) (holding that the ALJ had no duty to address claimant's obesity when, despite a diagnosis of obesity in the record, the claimant did not carry his burden of demonstrating there were "functional limitations ascribed to the condition[ ]")).

Here, the ALJ found that plaintiff suffered from multiple physical impairments, and the ALJ considered plaintiff's symptoms and resulting limitations when formulating the RFC. Plaintiff has not identified any other specific limitations, and she has not pointed to any medical evidence indicating there are additional functional limitations, imposed by her obesity which the ALJ should have included in the RFC. Plaintiff simply argues it is reasonable to conclude that

11

obesity negatively impacts her other conditions to some unspecified degree and to further *assume* that her obesity impacts her functioning to a greater extent than the ALJ found.  (Doc. 14 at PAGEID 1272-73; Doc. 23 at PAGEID 1321-22).  But the ALJ was not required to assume in the absence of evidence supporting plaintiff's assumptions that obesity exacerbated her other impairments and imposed greater restrictions than those the ALJ found and incorporated into the RFC.  *See* SSR 02-01p, 2000 WL 628049, at *6 (the ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments.").

Even if the ALJ erred by failing to find fibromyalgia, obesity, or any one of the additional impairments plaintiff mentions - postoperative hypothyroidism, obstructive sleep apnea, and periodic limb movement disorder - to be a severe impairment in this case, the error was harmless. "The fact that some of [a claimant's] impairments were not deemed to be severe at step two is . . . legally irrelevant" where other impairments are found to be severe.  *Emard v. Commr. of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020) (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)).  An ALJ's failure to find a severe impairment where one exists may not constitute reversible error where the ALJ determines that a claimant has at least one other severe impairment and continues with the remaining steps of the disability evaluation.  *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, the ALJ determined that plaintiff's severe physical impairments included localized osteoarthrosis of the left and right foot with degenerative joint disease, hallux valgus, degenerative disc disease, cervical spondylosis without myelopathy, and right rotator cuff tendinitis.  (Tr. 18).  The ALJ continued to conduct a meaningful analysis of how plaintiff's severe impairments impacted her physical functioning.  (Tr. 63-64, 67-74).  The ALJ adopted

these restrictions to account for plaintiff's functional limitations resulting from her physical impairments:

> [T]hrough the date last insured, the [plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently. She is also able to stand and/or walk for 6 hours per 8 hour day and sit for 6 hours per 8 [hour] day, with normal breaks. The [plaintiff] can frequently climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally stoop; frequently kneel; frequently crouch; and occasionally crawl. She must avoid all exposure to unprotected heights.

(Tr. 20). Plaintiff has not shown that even if the ALJ was bound to find her non-severe physical impairments were severe, those impairments imposed any additional functional limitations which the ALJ failed to include in the RFC finding. Because plaintiff has not shown that the record supports the imposition of additional functional limitations to account for her obesity, fibromyalgia, postoperative hypothyroidism, obstructive sleep apnea, or periodic limb movement disorder, any erroneous categorization of these impairments by the ALJ as severe or non-severe in this case would be harmless. *Cf. Foster v. Bowen*, 853 F.2d 483, 488-89 (6th Cir. 1988) (relevant consideration in disability case is not claimant's diagnoses, but whether her impairments impose disabling limitations).

Plaintiff's second and third assignments of error are overruled.

### 2. The ALJ's evaluation of plaintiff's subjective complaints and consideration of daily activities (Assignments of Error 1 and 5)[5]

Plaintiff alleges the ALJ erred in evaluating her subjective complaints and in equating her activities of daily living and household chores to substantial gainful activity. (Doc. 14 at

---

[5] Because both of these assignments of error challenge the ALJ's evaluation of plaintiff's subjective complaints, the Court has analyzed the allegations of error together. (Doc. 14 at PAGEID 1267-69, 1276-78).

PAGEID 1267-1269, 1276-78; Doc. 23 at PAGEID 1326-28). Plaintiff argues that her subjective complaints "must be given full credit" because they are supported by her treating physicians' medical findings, and her testimony is not contradicted by the findings of consultative examiner Dr. Hassan or any other "substantial evidence of record." (*Id*. at PAGEID 1269). Plaintiff argues that rather than relying on the objective evidence to find her subjective complaints were supported and properly analyzing the evidence as a whole, the ALJ "cherry pick[ed]" findings from the reports that supported her decision. (*Id*.).

Title 20 C.F.R. § 404.1529 and Social Security Ruling 16-3p, 2016 WL 1119029, *3 (March 16, 2016) describe a two-part process for evaluating an individual's subjective statements about symptoms, including pain.[6] First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. *See also* 20 C.F.R. § 404.1529(c)(3). The ALJ's

---

[6] SSR 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms," superseded SSR 96-7p and became applicable to decisions issued on or after March 28, 2016. *See* SSR 16-3p, 2017 WL 5180304 (October 25, 2017) (clarifying applicable date of SSR 16-3p).

assessment of a claimant's subjective complaints and limitations must be supported by substantial evidence and be based on a consideration of the entire record. *Rogers*, 486 F.3d at 247. The ALJ's explanation of his decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248.

Plaintiff alleges the ALJ erred by failing to give her testimony about her subjective complaints full credit because her testimony is "supported by her physicians and the objective findings that they made." (Doc. 14 at PAGEID 1269). The only objective medical findings plaintiff points to are imaging results from 2009 and 2015. (*Id*. at PAGEID 1268-69). The ALJ acknowledged abnormal findings from a cervical spine MRI performed in September 2009. (Tr. 21-22, citing Tr. 729). The ALJ noted that plaintiff's physician, Dr. Paula Ackerman, D.O., found she had full strength when she examined plaintiff for complaints of bilateral shoulder pain of recent onset in April 2015, "though [Dr. Ackerman] referred to a 2009 MRI showing disc herniations at C4-5, C5-6, and C6-7, as well as multiple areas of foraminal narrowing." (Tr. 22, citing Tr. 729, 733). The 2015 MRI results disclosed "[m]ultilevel degenerative changes in the cervical spine, worse at C5-C6 with central canal stenosis and cord compression and associated moderate to severe right neuroforaminal narrowing." (Doc. 14 at PAGEID 1268-69, citing Tr. 358). Plaintiff argues that rather than relying on these objective findings to find her subjective complaints were supported, the ALJ erroneously gave Dr. Hassan's opinion "considerable weight" based in part on its "general" consistency with the record. (*Id*. at PAGEID 1268). Plaintiff contends that the consistency of Dr. Hassan's opinion with the record is "questionable at

best" given that he found on examination that her cervical spine "was normal," whereas the earlier imaging results showed the abnormalities set forth *supra*.  (*Id*. at PAGEID 1268).

The ALJ did not err by failing to find that plaintiff's subjective complaints were fully supported by the objective medical evidence.  Nor did the ALJ improperly "cherry pick" the evidence by choosing to rely on certain medical findings and opinions to resolve various inconsistencies in the record.  *Solembrino v. Astrue*, No. 1:10-cv-01017, 2011 WL 2115872, at *8 (N.D. Ohio May 27, 2011) (an ALJ "does not 'cherry pick' the evidence merely by resolving some inconsistencies unfavorably to a [plaintiff]'s position."). Rather, the ALJ reasonably relied on the findings and opinions of the consultative examining physician, Dr. Hassan, and the state agency reviewing physicians to find that the objective medical evidence did not fully support plaintiff's allegations of pain and other symptoms.

Dr. Hassan generally concluded that plaintiff "appears to be at least MILDLY impaired" in her ability to perform numerous basic work activities, but he did not provide a function-by-function assessment.  (Tr. 463). His opinion therefore "do[es] not speak directly to . . . whether plaintiff's RFC permitted [her] to work despite her [] impairments."  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007) (noting that a treating doctor's general findings were relevant on the issue of whether the claimant's RFC permitted her to work, but they were not controlling absent a functional capacity assessment).  Nonetheless, plaintiff has not shown that Dr. Hassan's opinion is inconsistent with the ALJ's evaluation of plaintiff's subjective complaints of pain and other symptoms.  *See Walters v. Comm'r of Soc. Sec.*, No. 1:14-cv-481, 2015 WL 1851451, at *11 (S.D. Ohio Apr. 22, 2015), *report and recommendation adopted*, 2015 WL 5693640 (S.D. Ohio Sept. 29, 2015) (restrictions imposed by the ALJ were not inconsistent

with physician's statement that plaintiff's symptoms "would adversely affect [plaintiff's] work capabilities" absent an RFC assessment). To the contrary, Dr. Hassan's findings on examination appear to be consistent with the ALJ's finding that plaintiff had the RFC to perform a limited range of light work. (Tr. 455-58).

Plaintiff's main complaints when examined by Dr. Hassan in December 2016 were lumbar and bilateral foot pain. (Tr. 460-63). He reported that plaintiff "ambulate[d] well" and "normally," and she did not appear to have any issues with her gait. (Tr. 461, 463). Dr. Hassan also reported that plaintiff appeared to be "fairly comfortable when getting around and in the sitting and supine positions," "[e]xamination of the cervical spine *appeared 'normal' externally*" range of motion of the cervical spine was normal, and plaintiff seemed "to be able to move the neck quite well in all directions." (Tr. 461, 462, 463) (emphasis added). Shoulders, elbows, wrists, and hands appeared to be normal, and plaintiff could extend, flex, abduct, adduct, and rotate both shoulders normally. (Tr. 462). Examination of the hands revealed no abnormalities, and grip strength appeared to be normal in both hands with plaintiff "able to make a good fist bilaterally." (*Id*.). The knees, ankles, and feet showed no significant abnormalities on examination. (*Id*.). The only abnormal finding on examination of the dorsolumbar spine was mild tenderness in the lumbosacral area. (Tr. 463). Muscle strength was normal in the upper and lower extremities, and plaintiff could stand on heels and toes. (*Id*.). She had some difficulty squatting because of lower back pain. (*Id*.). Lumbar spine x-rays disclosed "[m]ild degenerative hypertrophic spurring . . . anteriorly most prominently at L3-4" and no compression fracture. (Tr. 459). X-rays of the left foot disclosed mild-moderate degenerative changes at the first "MTP joint" and no fracture. (*Id*.). Manual muscle testing results and range of motion test

results were normal. (Tr. 455- 458). Dr. Hassan's impression was chronic pain in both feet-degenerative joint disease; lumbar pain-degenerative joint disease; status-post thyroidectomy for thyroid cancer (no residual cancer); and status-post bilateral foot surgery for arthritis. (Tr. 463). Dr. Hassan opined that plaintiff's "ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying and traveling as well as pushing and pulling heavy objects appears to be at least MILDLY impaired due to the objective findings" described in his report. (*Id.*).

Plaintiff has not pointed to any medical evidence or opinion that is inconsistent with Dr. Hassan's opinions and assesses greater limitations which the ALJ omitted from the RFC finding. Dr. Hassan found that "[e]xamination of the cervical spine appears normal" in December 2016. (Tr. 462). The ALJ was not required to reject his examination findings based on the 2009 MRI that was performed nearly six years earlier or the 2015 MRI (Tr. 358, 728-29), neither of which was necessarily inconsistent with Dr. Hassan's examination findings.

In addition, no treating physician provided a functional assessment, and Dr. Hassan's largely normal examination findings and opinion that plaintiff was "at least" mildly impaired in her ability to perform basic activities do not appear to be materially inconsistent with the assessments of the non-examining state agency physicians, which the ALJ gave "considerable weight." (Tr. 133-34, 145-48). The state agency physicians reviewed the record in December 2016 and on reconsideration in April 2017 and found that plaintiff was able to lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk for a total of six hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday. (Tr. 133). They limited plaintiff to frequently climbing ramps/stairs, crouching, and kneeling and occasionally climbing ladders/

ropes/scaffolds and stooping/crawling. (Tr. 134). The ALJ incorporated their assessment of plaintiff's functioning into the RFC finding and further restricted plaintiff to never climbing ladders, ropes, or scaffolds and avoiding all exposure to unprotected heights. (Tr. 20). Plaintiff has not shown that the ALJ erred in crediting the state agency reviewing physicians' medical opinions, whose assessments the ALJ was bound to consider, and declining to assess greater limitations based on plaintiff's subjective complaints of more debilitating pain and symptoms. See *Molebash v. Berryhill*, No. 2:16-cv-869, 2017 WL 3473816, at *4 (S.D. Ohio Aug. 14, 2017), *report and recommendation adopted sub nom. Molebash v. Commr. of Soc. Sec.*, 2017 WL 3769353 (S.D. Ohio Aug. 29, 2017) (state agency medical consultants "are highly qualified and experts in Social Security disability evaluation" whose opinions the ALJ must consider in accordance with the regulations); *see also* 20 C.F.R. § 404.1513a.

Plaintiff also claims that the ALJ improperly equated her ability to drive and perform other daily activities with the ability to perform substantial gainful activity. (Doc. 1276-78; Doc. 23 at PAGEID 1326-28; *see* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996) ("Ordinarily, [RFC] is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule."). Plaintiff alleges that under the ALJ's reasoning, any claimant who drives would not qualify for disability benefits, which is not a valid conclusion.

"Although the ability to do household [and other] chores is not direct evidence of an ability to do gainful work" under 20 C.F.R. § 404.1572, "[a]n ALJ may . . . consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or

ailments." *Keeton v. Commr. of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997)).  *See also Blacha v. Sec. of*

*Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("[A]n ALJ may consider household

and social activities in evaluating complaints of disabling pain."); *Masters v. Comm'r of Soc.*

*Sec.*, 707 F. App'x 374, 379 (6th Cir. 2017) ("The ALJ reasonably noted that despite her

symptoms, [the plaintiff] remains able to perform routine, daily tasks that he viewed as

inconsistent with her allegations that her pain and symptoms were completely debilitating);

*O'Brien v. Commr. of Soc. Sec.*, 819 F. App'x 409, 417 (6th Cir. 2020) ("[T]he ALJ reasonably

concluded that [the plaintiff's] subjective evaluations of his physical abilities was inconsistent

with his daily activities, his recent part-time work as a 'clean-up man,' his golf trip and cross-

country trip to and from Colorado, his shoveling of snow, and his carpet installation," and

substantial evidence supported the ALJ's conclusion that the plaintiff experienced "mild to

moderate functional limitations in his ability to perform basic work activities . . . .").

    Here, the ALJ found that plaintiff's complaints of pain and functional limitations were

inconsistent with her daily activities, including driving about three times per week for 30 minutes

at a time, which requires the "significant physical abilities" of sitting in one place for a period of

time, turning the steering wheeling, moving one's body so as to see in all directions and angles,

and operating foot controls; bagging her own groceries; dressing herself and showering;

shopping; cooking simple meals; handwashing dishes; and doing laundry.  (Tr. 22).  The ALJ

appears to have placed undue emphasis on the physical and mental functional abilities required

to drive a car when evaluating plaintiff's subjective complaints.  Nonetheless, assuming the ALJ

erred by relying on plaintiff's ability to drive for 30 minutes at a time, the ALJ did not commit

reversible error by doing so. The Sixth Circuit has held that a harmless error analysis applies and the ALJ's decision will be upheld where an adverse finding is made based in part on invalid reasons, so long as substantial evidence remains to support the decision. *Johnson v. Commr. of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) (citing *Ulman v. Comm'r of Soc. Sec.,* 693 F.3d 709, 714 (6th Cir. 2012)). The Court does not have a "substantial doubt" as to whether the ALJ would have made the same ultimate finding if she had not factored plaintiff's driving ability so heavily into her evaluation of plaintiff's subjective complaints. *See Keeton*, 583 F. App'x at 524. Thus, assuming the ALJ's reliance on plaintiff's ability to drive for 30 minutes at a time was invalid, this specific finding was harmless error.

Plaintiff's first and fifth assignments of error are overruled.

### 3. The ALJ's formulation of the RFC (Assignment of Error 4)

Plaintiff additionally argues that the ALJ's RFC determination was not supported by substantial evidence. The ALJ is vested with the responsibility for assessing a claimant's functional capacity based on the relevant medical and other evidence. 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(3), 404.1546. "[T]he threshold for such evidentiary sufficiency is not high." *O'Brien*, 819 F. App'x at 416 (quoting *Biestek v. Berryhill*, --U.S.--, 139 S. Ct. 1148, 1154 (2019)). "[T]he decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Id.* (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)). The plaintiff "bears the burden of demonstrating a RFC more restrictive than that determined by the ALJ." *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

21

Plaintiff has not shown that the ALJ erred by failing to fully account for her physical impairments and resulting limitations in the RFC finding or to explain the reasons for her finding.  The ALJ determined that plaintiff had the RFC to perform a limited range of light work. This RFC incorporated the assessments of the state agency reviewing physicians, who opined that plaintiff could lift/carry and push/pull up to 20 pounds occasionally and 10 pounds frequently; stand/walk approximately four hours in an eight-hour workday; and sit approximately six hours in an eight-hour workday.  (Tr. 133, 146).  The ALJ was not required to incorporate any specific restrictions into the RFC finding to account for consultative examining physician Dr. Hassan's opinion, which did not include a functional capacity assessment.  No other medical source opined that plaintiff had functional limitations that precluded her from performing a range of light work.  And although plaintiff testified that she is unable to work because of pain and symptoms from her impairments, the ALJ did not commit reversible error in discounting plaintiff's subjective complaints for the reasons discussed above.  Plaintiff has not carried her burden to show that the evidence before the ALJ required the inclusion of greater limitations than those the ALJ found.

The fifth assignment of error is overruled.

## IT IS THEREFORE ORDERED THAT:

The decision of the Commissioner is **AFFIRMED** and this case is closed on the docket of the Court.

Date: 9/28/2021

Karen L. Litkovitz
United States Magistrate Judge

22